In the Matter of the Accounting of PERCIVAL M. WERLICH, as Administrator with the Will Annexed of PERCIVAL J. WERLICH, Deceased, Appellant.

ALVERDA FEARON et al., Respondents.

**Will — codicil providing that it shall be valid only if wife makes a will after death of testator becomes inoperative by her predeceasing him — codicil should be interpreted so as to prefer son of testator to next of kin of wife.**

1. The rule that when a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers can be overcome only by clear and unequivocal language.

2. A codicil to a will providing that it should only be deemed valid in the event that the testator's wife should die before she " makes a will after my death, otherwise it is to be treated as nugatory and as non-existent," becomes inoperative where the wife dies before the death of her husband. The intent of the testator was to provide for the contingency that his wife, surviving him, should not make a will after his death.

*Matter of Werlich,* 190 App. Div. 353, reversed.

(Argued March 2, 1921; decided March 15, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 16, 1920, which reversed a decree of the New York County Surrogate's Court holding invalid a codicil to the will of Percival J. Werlich, deceased, and remitted the matter to said Surrogate's Court for entry of a decree in accordance with the opinion of said Appellate Division.

The facts, so far as material, and the questions certified are stated in the opinion.

*Paul Armitage* for appellant. The codicil never became a disposing instrument by reason of a failure of the condition precedent. (*Stinger* v. *Young*, 191 N. Y. 157; *Matter of Wilcox*, 194 N. Y. 288; *Wilbur* v. *Wilbur*, 165 N. Y. 451; *Steinway* v. *Steinway*, 163 N. Y. 183.) Under no fair construction of the will and codicil can there be spelled out an intention of the testator to leave the property to the heirs or next of kin of his wife. (*Matter of Thomas*, 33 Misc. Rep. 729; *Robbins* v. *McClure*, 100 N. Y. 328; *Matter of Green*, 63 Misc. Rep. 638; *Austen* v. *Met. St. Ry. Co.*, 108 App. Div. 249.) The construction the administrator C. T. A. places on the will and codicil would pass the estate to testator's son and thus favor the natural object of his bounty rather than strangers to the testator. (*Goodwin* v. *Coddington*, 154 N. Y. 283; *Matter of Miller*, 18 App. Div. 311; 155 N. Y. 646; *Sage* v. *Wheeler*, 3 App. Div. 38; *Shangle* v. *Hallock*, 6 App. Div. 55; *Trowbridge* v. *Coss*, 126 App. Div. 679.)

*Howard Mansfield* for respondents. The codicil in question was, from all points of view, a valid, effective testamentary disposition of the decedent's property. (*Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; *Meeks* v. *Meeks*, 161 N. Y. 66; *Weeks* v. *Cornwell*, 104 N. Y. 325; *Kalish* v. *Kalish*, 166 N. Y. 368; *Eidt* v. *Eidt*, 203 N. Y. 325; *Matter of Fowles*, 222 N. Y. 222.)

Pound, J. Captain Percival Julius Werlich and Lucy Glover Werlich were married during the year 1903. He had been married previously and a divorce had been procured by his first wife. One child was born to the first marriage, Percival McCeney Werlich, his father's sole heir at law and next of kin and the petitioner herein, accounting as administrator with the will annexed of his father. Mrs. Werlich died on October 6, 1915. Werlich died March 16, 1916.

On February 28, 1905, Werlich made a will wherein he gave to his son his gold watch and chain, and then provided after payment of all his just debts and funeral expenses that the balance should go to his wife. On October 21, 1911, he executed a codicil to his will upon the construction of which the rights of the parties here depend. The codicil reads as follows:

" I, Percival Julius Werlich, living at present in Paris, France, being of sound mind, do hereby establish and declare this to be a codicil to my will — *but this codicil shall only be deemed valid in the event that my wife, Lucy Glover Werlich, should die before my said wife makes a will after my death, otherwise it is to be treated as nugatory and as non existent.*

" I hereby bequeath all property of whatever kind or nature standing in my name to my son Percival McCeney Werlich, except certain stocks and shares, which were given to me from time to time by my said wife, and which are advertised on the attached list, authenticated by my signature. These excepted stocks and shares I direct to be returned to my said wife's estate. All other properties of whatever kind or nature which may come to me by operation of the will of my said wife, I wish returned to her estate, in order that these may be disposed of according to directions contained in the duly declared will of my said wife and which antedates my death."

On the same date Mrs. Werlich had executed a similar codicil to her will, but she made a new will on February

21, 1912, which made no reference to the shares of stock standing in her husband's name. The two lists of stocks then existed, one of those standing in the husband's name and the other of those standing in the wife's name. The personal representatives of the estate of Mrs. Werlich and also her sister, one of her next of kin, claim the stocks mentioned in the codicil.

The surrogate held that the codicil, by its terms, became inoperative because of the death of Mrs. Werlich before her husband.

The Appellate Division held that the codicil was effective because Mrs. Werlich did in fact die before making a will after testator's death inasmuch as she died before him, and that those answering to the description of the next of kin of the wife at the time of testator's death were entitled to take in her right the excepted stocks and shares therein indicated. The decree was reversed and the matter remitted to the Surrogate's Court to enter a decree accordingly, but leave was granted to appeal to the Court of Appeals from the order of reversal, and the following questions were certified:

(1) Is the codicil dated October 21, 1911, to the last will and testament of Percival Julius Werlich, deceased, a valid, effective testamentary disposition of his property?

(2) If it be valid, did it dispose of the shares of stock on the lists attached thereto or of any properties which had come to him by his wife's will?

(3) If it did dispose of those shares and stocks or that property, who was entitled thereto: (a) the personal representatives of the wife? (b) her next of kin ·at her death? or (c) those answering that description at the date of the testator's death?

We have an ambiguous codicil. No rule requires us to endeavor to give it effect except as it appears from the language thereof that the facts have arisen under which the testator directed that it should be declared valid. No

legal presumption in favor of or against its validity is created. The rule of presumption against intestacy and the rule in favor of one's blood against strangers often conflict and neither is a controlling guide to testator's intention. (*Raymond* v. *George Junior Republic Assn.*, 82 Misc. Rep. 507, 513 and cases cited.) Where the presumption against partial intestacy is in conflict with the presumption against disherison (*Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92, 100) the weaker must yield. As stated by HAIGHT, J., the rule to the effect that the testator did not intend to die intestate " has many exceptions and is only occasionally followed." (*Matter of Disney*, 190 N. Y. 128, 132.) But the rule that " where a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers * * * can be overcome only by clear and unequivocal language." (*Wood* v. *Mitcham*, 92 N. Y. 375, 379, 380.) Had no codicil been executed, the legacy to the wife would have lapsed on her death; testator would have died intestate as to the residuary estate and his son would have taken to the exclusion of the next of kin of the wife. (*Matter of Tamargo*, 220 N. Y. 225, 228.)

Testator when he executed his codicil seems to have had in mind the contingency:

(a) That he might predecease his wife with the excepted shares of stock as a part of his estate,

(b) That she might die before making a will after his death. Then, if she made no such will, her legatees under her will executed prior to his death might take the estate which came to him from her to the exclusion of his own son.

This was the result which, by the plain language of the codicil, he desired to prevent. That Werlich had confidence that his wife would, if she survived him, make suitable provision by will for his son, or at least that she would consider the son's claim on her bounty after

her husband's death, may be surmised. He trusted his wife to do the right thing as she chose. To provide for the contingency that Mrs. Werlich, surviving her husband, should not make a will after his death, testator endeavored to make a disposition of the property she would receive from him, under his original will, except the stock and shares which she had given him, by providing that all such property which came to her from him should go to his son. As it would not be known until after the death of Mrs. Werlich whether she had made a will after his death, the provision in the codicil that the excepted stocks and shares should be returned " to my said wife's estate " are apt. The wife would not take in her lifetime under the codicil.

This interpretation seems consistent with the purpose of the testator, except as the last sentence of the codicil confuses it. The testator therein directs that the properties which may come to him by the operation of the wife's will be returned to her estate. As he could take nothing under his wife's will unless she predeceased him, the inconsistency affects no property for he got nothing under his wife's will but an income for life. Perhaps he wrote this sentence to express an absolute wish, but the codicil does not make the wish operative because the contingency when the codicil shall be deemed valid never arose and the codicil never took effect, and by its terms " is to be treated as nugatory and non-existent."

If, however, we should give effect to the codicil by relating it to the last will and testament of Mrs. Werlich, the same result would be reached. The properties mentioned in the codicil were to be returned to her estate to be disposed of according to directions contained in the will of his wife which antedated his death, but the will of Mrs. Werlich made no disposition of any property received by her from her husband's estate. As to such property she died intestate. Her will speaks as of her death, not as of the death of testator. It follows that the

estate of her husband would take the property in due course of administration and it would then come back into his estate as if no codicil existed. No legacy to Mrs. Werlich's next of kin can be spelled out of the codicil and nothing suggests in the remotest degree that testator desired to provide for them to the exclusion of his own son.

The order of the Appellate Division should be reversed and the decree of the surrogate affirmed, with costs in this court and in the Appellate Division payable out of the estate. The first question certified should be answered in the negative; the second and third questions not answered.

HISCOCK, Ch. J., CHASE, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.